The Ingber Law Group
Jason M. Ingber (SBN 318323)
3580 Wilshire Blvd., Suite 1260
Los Angeles, California 90010
T:310-270-0089
E-mail: ji@jasoningber.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Taylor Read, Kevin Neu, Amit Jain, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| vs. | |
| HYUNDAI MOTOR AMERICA, a California corporation, and DOES 1 through 5, inclusive, | |
| Defendants. | |

Kevin Neu, Amit Jain, Taylor Read, individually and on behalf of all others similarly situated ("Plaintiffs"), bring this Complaint against defendant Hyundai Motor America ("Hyundai"), and DOES 1 through 5 ("Defendants") and allege on behalf of themselves and all consumers that purchased the below described vehicle in California[1] as follows:

## **GENERAL ALLEGATIONS**

1.     Hyundai runs many red lights in their sales process for the Hyundai Nexo, which is advertised as a zero-emissions hydrogen-fueled luxury consumer vehicle.

---

[1] Hyundai sells the hydrogen powered vehicle at issue here in the United States and only in California.

2.     According to the plain facts, retail hydrogen is worse for the environment than fossil fuels, consequently, on its face the marketing behind this supposed clean energy vehicle is a sham.[2]

3.     It is industry-known that hydrogen fuel is not fit for ordinary consumer retail motor vehicle use.

4.     Hyundai knows that fuel would and is not accessible to consumers that purchased the Nexo prior to each sale but Hyundai actively concealed the inordinate problematic nature behind refueling the Nexo with hydrogen.

5.     For example, many years prior to the filing of the instant action, Shell decided to close every single one of their retail hydrogen fueling stations that Shell opened (which accounts for over ten percent of all fueling stations available to Plaintiffs) with the assessment that the installed prototype technology to run their hydrogen station reached the end of its life.

6.     This is a lawsuit brought by and on behalf of current and former owners and lessees of the Hyundai Nexo, who were lied to by Hyundai via advertisements and statements made by their salespeople in their dealerships to induce the Plaintiffs to purchase or lease the Nexo.

7.     Hyundai, through its dealerships, continues to sell the Nexo.

8.     Hyundai sells the Nexo with the knowledge that the car cannot perform per the express and implied warranties of the Nexo.

9.     Hyundai dealerships and its website tell Plaintiffs prior to sale and during the sales process that hydrogen fuel is available and refuels for the Nexo are seamless.  Hyundai explicitly told Plaintiffs that the refueling experience would be similar to refueling with gas.  This is a lie.  Refueling the Nexo is a nightmare.  It takes hours and often fuel is not available.

---

[2]     The fossil fuel industry is the primary driver behind retail hydrogen; they unfairly influence politics to create government investments so that they can stagger electric vehicle adoption. Hyundai stands to gain and does gain from these nefarious lobbying activities that green wash hydrogen and lure the public to believe in its viability and delay electric battery adoption.

**CLASS ACTION COMPLAINT**

10.     Hyundai fails to disclose and actively conceals prior to and during the sale of the Nexo that hydrogen fuel actually may not be available for days at a time.

11.     Hyundai fails to disclose and actively conceals that every hydrogen refuel takes hours on average.

12.     Hyundai fails to disclose and actively conceals that hydrogen fuel pumps often freeze up and lock onto the Nexo, and the car is locked into to the fueling station until an offsite technician arrives.

13.     Hyundai lures in consumers to purchase or lease the Nexo with a gift card for $15,000.00 worth of hydrogen fuel with a promise by its salespeople that the gift card will last for three years or more, when the gift cards do not.[3]

14.     Hyundai provides consumers with a website that they told Plaintiffs will provide accurate information as to when and where fuel is available (e.g. h2-ca.com) however the information provided on the website is inaccurate which causes people to drive to fuel stations only to see that the station is completely down.

15.     Plaintiffs are often compelled to embark on arduous journeys, often exceeding 50 miles in distance (which eats into the already limited fuel capacity of the Nexo), in their quest to locate an operational hydrogen refueling station. This imposes severe disruptions upon their lives, forcing them to divert their time, and resources towards addressing an issue that should be hassle-free.

16.     Hyundai utilizes these sinister lies knowingly, and employs these lies to sell a specious motor vehicle to the general public.

17.     Plaintiffs would not have bought the Nexo had Hyundai disclosed the actual fuel range and refueling conditions of the Nexo.

---

[3]     Plaintiffs were told their gift card would last three years, see e.g. https://www.hyundaiusa.com/us/en/vehicles/nexo (equating $15,000 to at least three years of hydrogen), however, the fuel card didn't last three years.

**CLASS ACTION COMPLAINT**

18.    Plaintiffs request an injunction that Hyundai stop sales of the Nexo and cease any advertisements related to the Nexo.

19.    Plaintiffs' nightmares grow after they attempt to drive the Nexo with issues that affect the safety value and use of the vehicle: the Nexo will sometimes stall; the bluelink and apple link does not work, intense recurring costly maintenance issues such as frequent required replacements of the ion filter, the fuel card provided by Hyundai does not reload or work, etc.

20.    Critically, dealerships cannot fix these issues or clear these concerning fault codes, as the overwhelming majority of Hyundai dealerships don't service the Nexo.

21.    Many Plaintiffs need their Nexo to get to work and others rely on the car to attend medical appointments and cannot reliably do so.

22.    Many days are wasted looking and waiting for fuel that can never be given back to the Plaintiffs.

23.    Now, many of the Plaintiffs have parked their Nexo in their garages and are not using them because the headaches and cost of driving each mile have become excessively prodigious.

24.    Hyundai also compels Plaintiffs to charge car rentals and other fees to their credit cards when prohibitive concerns with the Nexo arise (and even if and when Hyundai refunds these charges) Plaintiffs are burdened with ensuring they timely pay off expensive charges on their credit cards or else experience their credit score plummet.

25.    Hyundai utilizes lies to lure consumers into lucrative contracts with Hyundai and said contracts create a false debt as the contract is built on lies, and consumers are trapped in hefty monthly debt collection or face a credit score drop.

## CLASS ALLEGATIONS

26.    Plaintiffs brings this action as a Class action on behalf of themselves and all other persons similarly situated, against Hyundai.

27.    This action is brought and may properly be maintained as a Class action against all Defendants pursuant to Code of Civil Procedure § 382 and other applicable rules of civil procedure. The community of interest is well defined and the proposed Plaintiff Class is easily ascertainable.

28.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements with respect to this putative class.

29.    The class is defined as follows:

**This class encompasses all individuals that leased or purchased a Hyundai Nexo vehicle in the past four years**

Excluded from class are: (a) any officers, directors, employees, executives, board members, and legal counsel of Hyundai; (b) any judge assigned to hear the case (or spouse or family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorney of record in this case.

30.    **Numerosity**: The Class is so numerous that joinder of all members is impracticable. As set forth above, Plaintiffs believe there are thousands of Class members located just in California. The number and identity of the Classes' members are presently unknown to Plaintiffs because such information is in the control of Hyundai but can be readily ascertained.

31.    **Common Questions Predominate**: There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These common questions of law and fact exist as to all members of the

class and predominate over the questions affecting only individual members of the class. The common questions which predominate over individual issues include, but are not limited to; (a) whether the Hyundai knew the Nexo was set to fail prior to sale (b) what information Hyundai told the United States and California government to induce favorable tax rebates to lure customers (c) whether the Nexo is easily refuellable; (d) whether Nexo knew that majority of their dealers could never service the Nexo (e) whether the Nexo is merchantable (f) whether Hyundai's marketing of the Nexo was false or misleading (g) whether Hyundai's conduct was violative of California consumer statutes (h) whether the class is entitled to restitution and punitive damages.

32.    **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Hyundai engaged in a common conduct giving rise to the violations of the legal rights sought to be enforced uniformly by Plaintiffs and the Class members. Identical statutory violations, business practices and injuries are involved. Plaintiffs' claims are consequently representative of and co-extensive with the claims of Class members.

33.    **Adequacy**: The named Plaintiffs are adequate representatives of the Class on whose behalf this action is prosecuted. Plaintiffs' interests do not conflict with the interests of the Class. Plaintiff has retained competent counsel with experience in class action litigation and will protect the interests of the Class in that there are no conflicts between his interests and the interests of the other class members. The named Plaintiff and his counsel have the necessary resources to litigate this action, and counsel has the experience and ability required to prosecute this case as a class action.

34.    **Superiority:** A class action is superior to any other available method for the fair and efficient group-wide adjudication of this controversy since individual joinder of all Class members is impracticable. A class action presents fewer

**CLASS ACTION COMPLAINT**

management difficulties and provides the benefits of a single adjudication and comprehensive supervision by a single court.

35.    **Injunctive and Declaratory Relief:** Hyundai's wrongful actions as alleged herein are uniform as to all members of the Class. Hyundai has acted or refused to act on grounds that apply generally to the Class, so that final injunctive or declaratory relief is appropriate with respect to the Class as a whole.

## JURISDICTION AND VENUE

36.    This Court has jurisdiction pursuant to 15 U.S.C. § 1127 and other federal statutes such as 15 U.S.C. § 2310(d)(1).  Venue is proper in this District pursuant to 28 U.S.C. § 1391 et seq., as the Defendant corporations regularly conduct business in this District and have headquarters in this district.

## FIRST CAUSE OF ACTION

### VIOLATION OF SONG-BEVERLY ACT

37.    Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

38.    Hyundai provided an express warranty whereby all component parts and systems are covered for the sooner of 12 months or 12,000 miles or 36 months and 36,000.

39.    Under the Song-Beverly Consumer Warranty Act (the "California Lemon Law"), the Nexo is a "consumer good" purchased primarily for family or household purposes and Plaintiffs used the vehicle primarily for those purposes. Plaintiffs are "buyers" of consumer goods under the California Lemon Law.

40.    The foregoing defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The defects and nonconformities substantially impair the use, value and/or safety of the Nexo.

41.    Plaintiffs delivered the vehicle to authorized repair facilities for Hyundai Nexo vehicles for repair of the nonconformities on numerous occasions.

**CLASS ACTION COMPLAINT**

42.     Such authorized repair facilities were unable to conform the Hyundai Nexo to the applicable express warranties after a reasonable number of attempts.

43.     By failure of Hyundai to remedy the defects as alleged herein, or to issue a refund or replacement, Hyundai is in breach of its obligations under the California Lemon Law.

44.     Plaintiff is entitled to justifiably revoke acceptance of the Hyundai Nexo under the California Lemon Law.

45.     Under the California Lemon Law, Plaintiffs are entitled to reimbursement of all payments made towards the Nexo.

46.     Plaintiffs are entitled to damages resulting from Hyundai's failure to comply with its obligations under the California Lemon Law.

47.     Specifically, under the California Lemon Law, Hyundai has an affirmative obligation to offer to repurchase or replace the Nexo after Hyundai was unable to repair the defect within a reasonable number of attempts. However, Hyundai failed to offer to repurchase or replace the Nexo, and misrepresented to Plaintiff that it had no such obligation.

48.     Hyundai breached express warranties in that the Nexo was not of merchantable quality (e.g. concerning fault codes that dealers cannot explain or clear; car leaks excessive water) and not fit for its intended use.

49.     The Nexo's multiple defects make it more than likely for Plaintiffs to use the vehicle with inconvenience, failure, and mechanical breakdown.

50.     The Nexo is delivered to Plaintiffs with serious defects and nonconformities to warranty.

51.     The foregoing defects and nonconformities to warranty manifested themselves in the Nexo within the applicable express warranty period.

52.     Nonconformities substantially impair the use, value, and safety of the Nexo.

**CLASS ACTION COMPLAINT**

53.     The Nexo simply does not work.  Plaintiffs purchase and lease passenger vehicles with the reasonable expectation that such vehicles can feasibly be refueled. If a passenger vehicle cannot be readily and feasibly refueled, then its function of transporting people is completely undermined.

54.     Hyundai has failed to either promptly replace the new motor vehicle or to promptly make restitution in accordance with the Song-Beverly Act.

55.     By failure of Hyundai to remedy the defects as alleged above or to issue a refund or replacement vehicle, Defendants are in breach of their obligations under the Song-Beverly Act.

56.     Plaintiffs are entitled to all incidental, consequential, and general damages resulting from Hyundai's failure to comply with its obligations under the Song-Beverly Act.

57.     Plaintiffs are entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, punitive treble damages reasonably incurred in connection with the commencement and prosecution of this action.

58.     Because Hyundai willfully violates the Song-Beverly Act, Plaintiffs are entitled, in addition to the amounts recovered, a civil penalty of up to two times the number of actual damages for Hyundai's willful failure to comply with its responsibilities under the Act.  Plaintiffs similarly allege this cause of action under the Magnuson–Moss Warranty Act, especially in that the Act does not allow any such state law be limited, see e.g. 15 U.S.C. § 2301(10) §§ 104(a)(2). 108, 15 U.S.C. §§ 2304(a)(2), 2308.

## SECOND CAUSE OF ACTION
## VIOLATION OF MAGNUSON-MOSS

59.     Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

**CLASS ACTION COMPLAINT**

60.     At the time Plaintiffs purchased their Nexo, Hyundai warranted to Plaintiffs that the Nexo was of merchantable quality (worked like a regular gas-powered car) and that it was fit for its intended use (e.g. refueling would be seamless, [it is common for Plaintiffs to have to tow their Nexo due to fuel outages; sit for hours to fuel; wait for a technician arrives to unfreeze fuel pump handles] it is good for the environment.

61.     Among other warranties, the lease or purchase of the Nexo was accompanied by an implied warranty that the Nexo was merchantable pursuant to California Civil Code section 1792.

62.     Pursuant to California Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Nexo will comply with each of the following requirements: (1) the Nexo will pass without objection in the trade under the contract description; (2) the Nexo is fit for the ordinary purposes for which such goods are used (e.g. refueling would be straightforward and not time consuming); (3) the Nexo is adequately contained, packaged, and labelled; (4) the Nexo will conform to the promises or affirmations of fact made on the container or label.

63.     The Nexo was not fit for the ordinary purpose for which such goods are used because it was equipped with one or more defective vehicle systems/components.

64.     The Nexo did not measure up to the promises or facts stated on the container or label because it was equipped with one or more defective vehicle systems/components.

65.     The Nexo was not of the same quality as those generally accepted in the car market because it was leased or sold with numerous defective vehicle systems/components.

**CLASS ACTION COMPLAINT**

66.    The defective vehicle systems and components were present at the time of purchase or lease of the Nexo; thus, extending the duration of any implied warranty under governing case law.

67.    Plaintiffs are entitled to justifiably revoke acceptance of the subject Vehicle under Civil Code, section 1794, et seq.

68.    Plaintiffs hereby revoke acceptance of the Nexo.

69.    Plaintiffs are entitled to replacement or reimbursement pursuant to Civil Code, section 1794, et seq.

70.    The Nexo simply does not work.  Plaintiffs purchase and lease passenger vehicles with the reasonable expectation that such vehicles can feasibly be refueled. If a passenger vehicle cannot be readily and feasibly refueled, then its function of transporting people is completely undermined.

71.    The Nexo has mechanical issues that cannot be fixed as only a fraction of active dealerships service the Nexo, leaving Plaintiffs stranded.

72.    Plaintiffs are entitled to rescission of the contract pursuant to Civil Code, section 1794, et seq. and Commercial Code, section 2711.

73.    Plaintiffs are entitled to recover any incidental, consequential, and/or "cover" damages under Commercial Code, sections 2711, 2712, and Civil Code, section 1794, et seq.  Plaintiffs similarly allege this cause of action under the Magnuson–Moss Warranty Act.

74.    Title 15, United States Code, section 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. The Magnuson-Moss Warranty Act, Chapter 15 U.S.C.A., Section, 2301 et. Seq. is applicable to Plaintiffs' Complaint in that the Vehicle was manufactured, sold and purchased after July 4, 1975, and costs in excess often dollars ($ 10.00).

75.    The Nexo is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1); Defendant issued an implied

**CLASS ACTION COMPLAINT**

warranty within the meaning of 15 U.S.C. § 2301(7) that the vehicles would be useable. Pursuant to 15 U.S.C. § 2308, Plaintiffs' Vehicle was impliedly warranted to be substantially free of defects and non-conformities in both material and workmanship, and in safe condition, thus impliedly warranting the Nexo as fit for the ordinary purpose for which the Nexo was intended.

76.    Defendants' product was not useable for the intended purpose because of the reasons described herein.  Plaintiffs demand damages pursuant to 15 U.S.C. § 2310(d)(1) and attorney fees and costs on this action pursuant to 15 U.S.C. § 2310(d)(2).

## THIRD CAUSE OF ACTION

## FALSE ADVERTISING IN VIOLATION OF LANHAM ACT SECTION 43(a)

77.    Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

78.    The federal Lanham Act allows civil lawsuits for false advertising that "misrepresents the nature, characteristics, qualities, or geographic origin" of goods or services. 15 U.S.C. § 1125(a).

79.    California prohibits dissemination of information about products or services that is "untrue or misleading," with both civil and criminal enforcement. CA Bus. & Prof. Code § 17500.

80.    Hyundai violated the Lanham Act by promoting misleading statements, which include assertions about the supposed reliability of hydrogen fuel and the duration of time that the fuel cards would retain their value, and the extent the actual car would retain its value, and the "green" or ecofriendly element of the car which is patently false.

81.    For Plaintiffs, the "zero emissions" eco friendliness of the vehicle, implied or explicit understanding that dealerships could service the vehicle, and quick fuel time promised were key reasons Plaintiffs purchased or leased the Nexo. Plaintiffs relied on both Hyundai's written advertising and their dealerships'

advertising, as well as verbal comments by the dealerships' salespersons that the Nexo, in fact, was ecofriendly and convenient. Plaintiffs would not have purchased the Nexo had they known it was supremely inconvenient to refuel, was not eco friendly and no dealerships coupd practically service the Nexo.

82.    Another prominent feature of the false advertising by Hyundai was the complimentary $15,000 fuel card that Hyundai provided to customers who leased or bought the Nexo. At the time, Hyundai sales representatives consistently assured Plaintiffs that this fuel card would cover their fuel costs for over three years, considering hydrogen prices ranging from $13 to $16 per kilogram just last year. Furthermore, Plaintiffs were given explicit assurances that these prices would decrease in the future.

83.    Plaintiffs were led to believe that the Nexo would be a more cost-effective choice compared to traditional gasoline-powered cars and electric vehicles. Presently, the cost for hydrogen fuel has more than doubled, and filling up the Nexo is now more expensive than refueling the average heavy-duty gas-powered truck. The deceptive statements made by Hyundai concerning the Nexo's capabilities and the alleged benefits and cost-effectiveness of the Nexo compared to competitors played a significant role in the Plaintiffs' decision to lease or purchase the vehicle, and these statements constitute a direct violation of the Lanham Act.

84.    Indeed, with the fuel card and rebate that Hyundai offered the Nexo appeared to be an attractive purchase.

85.    Again, Hyundai also engaged in an active concealment as to the refueling experience and the fact that are simply not enough operable hydrogen fuel stations to make a hydrogen retail car a viable reliable option.

86.    In short, Hyundai advertised the car as though it was another regular luxury vehicle comparable to other products in its fleet when in fact it was an untrustworthy hellish car to be locked into.

**CLASS ACTION COMPLAINT**

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT – CAL CIV CODE SECTION 1750**

87.    Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

88.    Plaintiffs sent correspondences to Hyundai and the instant complaint shall serve as notice to trigger as to the necessary cure period for Hyundai to ameliorate the numerous violations of the CLRA addressed herein.

89.    The CLRA is a nonexclusive statutory remedy for unfair methods of competition and for unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods to any consumer.

90.    Also, Civil Code section 1760 provides that the overall purpose of the CLRA is to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to ensure protection.

91.    A CLRA claim based on a material omission, as with Hyundai's material omission with regard to the refueling issues and devaluing of the car, arises when defendants create affirmative misrepresentations while suppressing other material facts within its knowledge but not known to consumers. (*Klein v. Chevron USA, Inc*. (2012) 202 Cal.App.4th 1342,1383.)

92.    Civil Code section 1770, subdivision (a)(5) provides that it is unlawful to represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not in fact have. This is exactly what Hyundai did.

93.    Similarly, Civil Code section 1770(a)(7) provides that it is unlawful to represent that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. Hyundai marketed the Nexo to Plaintiffs by stating that the car is eco friendly and easy to

**CLASS ACTION COMPLAINT**

fuel.  The only reason Hyundai made this representation was to make it appear that the Nexo was of a particular standard or quality worth buying.

94.    Furthermore, Hyundai failed to disclose significant safety hazards associated with the vehicle and frequent maintenance issues.

95.    Hyundai also allowed their advertisers and agents tell Plaintiffs – falsely – that fuel would grow more accessible and the process would be similar to filling up a tank like a gas car.  This was a lie.  Fuel is scarce.  Pumps frequently do not work.

96.    Hyundai enticed Plaintiffs with a substantial and appealing incentive—the provision of a $15,000 fuel card to cover their hydrogen fuel costs. This incentive was presented to Plaintiffs with specific assurances from Hyundai sales representatives that the fuel card would sufficiently cover their fuel expenses for over three years. These assurances were grounded in the context of hydrogen prices ranging from $13 to $16 per kilogram just the previous year. Furthermore, Plaintiffs were led to believe that these hydrogen fuel prices would decrease in the future, making the Nexo a more cost-effective choice compared to conventional gasoline-powered cars and electric vehicles. Plaintiffs reasonably relied on these assurances when entering into the contract.

## FIFTH CAUSE OF ACTION

## CALIF. ROSENTHAL ACT

## CALIF. CIV. CODE §§ 1788-1788.32

97.    Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

98.    Plaintiffs and Hyundai entered into written contracts in which Defendants had induced Plaintiffs with both 1) specific representations in written advertisements and 2) oral representations from sales representatives regarding the vehicle's performance, and 3) by a general leveraging of Hyundai's brand in which they explicitly stated this car would be a luxury blue chip product from Hyundai

and actively concealed the plain unreliability that is associated with the hydrogen fuel system that would cost Plaintiffs hundreds of hours in inconveniences.

99.    In short, the Nexo that Hyundai sold Plaintiffs to induce them to sign a contract for hefty monthly payments (enforced by its finance arm Hyundai Capital America) yet the promised version of the Nexo does not resemble what Hyundai actually sold to Plaintiffs.

100.    Plaintiffs have attempted to trade-in the Nexo or sell the Nexo back to Hyundai and Hyundai values the Nexo at a 90 percent loss from its purchased value.

101.    Plaintiffs also have to make monthly payments for the Nexo even if they were unable to use the car for a month or longer due to a lack of fuel, or malfunction of the Nexo.

102.    Plaintiffs would also have to front monies for rental cars, towing fees and other associated fees that Hyundai would force Plaintiffs into, which was a financial stress that Hyundai never paid Plaintiffs for, or told them about ahead of time.

103.    By repeatedly collecting on debt from Plaintiffs for a consumer product which they knew did not resemble the representations about the actual product, especially for the times that Plaintiffs could not use the product, Hyundai exhibited false, deceptive, and misleading representations in connection with their attempt to collect a debt in violation of 15 U.S.C. § 1692e of the Federal FDCPA; and engaged in unfair and unconscionable means in an attempt to collect a debt in violation of 15 U.S.C. § 1692f of the Federal FDCPA.

104.    These violations of the FDCPA are incorporated into the Rosenthal Act via Calif. Civil Code § 1788.17. 57. By collecting on a debt with the threat that Plaintiffs product would be repossessed and their credit score tarnished and collecting on a debt that was fabricated through false representations, Defendant has engaged in harassing, oppressive, and abusive conduct in violation of 15

**CLASS ACTION COMPLAINT**

U.S.C. § 1692d of the Federal FDCPA; uttered false, deceptive, and misleading representations in connection with their attempt to collect a debt in violation of 15 U.S.C. § 1692e of the Federal FDCPA; threatened and attempted an action that cannot be legally taken in violation of 15 U.S.C. § 1692e(5) of the Federal FDCPA; engaged in unfair and unconscionable means in an attempt to collect a debt in violation of 15 U.S.C. § 1692f of the Federal FDCPA; and constitutes unlawful threats of dispossession when dispossession is exempt by law in violation of 15 U.S.C. § 1692f(6)(C) of the Federal FDCPA. Each of these violations of the FDCPA are incorporated into the Rosenthal Act via Calif. Civil Code § 1788.17.

58.

105.  As a result of these violations, Plaintiffs suffered emotional distress as they were locked into making payments for a product that only inconvenienced them with no way out, or else, and this is critical, Hyundai would destroy their credit.

106.  Plaintiffs are entitled to relief and redress for these violations, as they have suffered harm and financial loss as a result of Hyundai's actions.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE**

107.  Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

108.  California Business and Professions Code §17200, et seq., prohibits unfair competition, which includes any unlawful, unfair or fraudulent business act.

109.  Defendants committed violations under the aforementioned statutes and codes; and their acts are per se violations of the California Business and Professions Code Section 17200 et seq.

110.  The harm caused by Defendants' conduct outweighs any benefits that Defendants' conduct may have.

**CLASS ACTION COMPLAINT**

111.   Other people are likely to be deceived by the Nexo sales conduct of Hyundai as Plaintiffs were in fact deceived, by Hyundai's conduct.

112.   Defendants were unjustly enriched by committing said acts with the revenue from Plaintiffs and especially gleaned fresh data on consumer habits; retail and commercial market insight; federal and state legislative efforts to ease their introduction of new and experimental technology into the largest American state.

113.   As a result of Defendants' conduct, Plaintiffs were harmed and suffer damages including but not limited to: (a) monetary losses, (b) humiliation that this car would be helpful and usable like any other car only to be duped as Plaintiffs are stuck with these giant mortgages on these useless cars, (c) stress that they would not be able to travel to the places they were needed, (d) anxiety that the car was unsafe, as it inaccurately self-diagnoses itself, and may be truly experimental, (e) aggravation and sleepless nights; high interest rates on certain loan(s); loss of the ability to purchase and benefit from the funds expended on servicing the debt created by Hyundai.

114.   That as a direct and proximate result of Defendants' unlawful, unfair and fraudulent business practices as alleged herein, Plaintiffs suffered substantial injury in fact and lost money and time.

115.   That pursuant to California Business and Professions Code § 17200, et seq., Plaintiffs are entitled to recover their actual damages and restitution.

**SEVENTH CAUSE OF ACTION**

**NEGLIGENCE**

116.   Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

117.   Hyundai has a duty to ensure their sales tactics, sales training and sales personnel all follow the relevant laws and regulations and to especially follow their own internal policies and procedures.

- 18 -
**CLASS ACTION COMPLAINT**

118.    Hyundai focuses on profit over truth in their advertising and sales processes.

119.    Hyundai causes Plaintiffs a loss as they are knowingly selling and sold a car that does not achieve the advertised fuel capacity, is not easy to refuel, causes Plaintiffs to have to front charges on their credit cards and myriad other losses and frustrations to Plaintiffs.

120.    Hyundai causes Plaintiffs a continued loss as they are stuck with a car that causes stress, anxiety, loss of funds, loss of time and constitute per se violations of the California Lemon Law, Lanham Act and other laws.

121.    Hyundai's sales of the Nexo is a proximate cause of the loss that Hyundai causes Plaintiffs and is potential harm that could befall other California citizens.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

122.    Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

123.    Plaintiffs would not have given any credit reporting agencies written instructions or permission to provide any consumer reports to Hyundai if they knew that Hyundai would breach its obligations to the Plaintiff and sell a vehicle that was not able to perform as advertised.

124.    Hyundai conducted hard inquiries or "hard pulls" and obtained Plaintiffs' credit reports for an impermissible purpose under the FCRA.

125.    Hyundai did not obtain Plaintiffs' credit report for a legitimate business need.

126.    Plaintiffs' consumer reports were not obtained for a purpose for which the consumer report is authorized to be furnished under the FCRA.

127.    The purpose for which Plaintiffs' consumer report was obtained by Hyundai was not certified in accordance with the FCRA.

**CLASS ACTION COMPLAINT**

128. As a result of Hyundai's conducting hard pulls on Plaintiffs' credit reports, Plaintiffs suffered damages, which include, but are not limited to Plaintiffs' credit scores being lowered.

129. That as a result of Hyundai, Plaintiffs suffered actual damages, including, but not limited to: humiliation, shame, stress, anxiety and aggravation.

## NINTH CAUSE OF ACTION

## FRAUD

130. Plaintiffs incorporate all allegations in this complaint and as though fully restated in this cause of action.

131. Hyundai concealed or suppressed material facts about the Nexo (non eco friendly nature of hydrogen, refueling issues, lack of access to maintenance, etc.).

132. Hyundai had knowledge of these material facts.

133. These material facts were not within reasonably diligent attention, observation, and judgment of the Plaintiffs

134. Hyundai suppressed or concealed these facts with the intention that the Plaintiffs be misled as to the true condition of the Nexo.

135. Plaintiff was reasonably so misled.

136. Plaintiff suffered damages as a result.

## DEMAND FOR JURY TRIAL

137. Plaintiffs hereby demand trial by jury in this class action.

## PRAYER FOR RELIEF

138. Wherefore, Plaintiffs pray for judgment as follows:

139. For general, special, punitive and actual damages according to proof at trial and at least $25,000,000 as to all affected;

140. For rescission of any lease or purchase agreement and restitution of all monies expended;

141. For diminution in value;

**CLASS ACTION COMPLAINT**

142.   For incidental and consequential damages according to proof at trial;

143.   For civil penalty in the amount of two times Plaintiffs' actual damages per the Song-Beverly Act;

144.   For prejudgment interest at the legal rate;

145.   For reasonable attorney's fees and costs of suit under the FDCPA and FCRA and statutory penalties;

146.   For declaratory judgment and injunctive relief that Hyundai formally discontinue its Nexo sales in the United States, especially California;

147.   For declaratory judgment and injunctive relief that Hyundai violated the False Advertising Act; and

148.   For other further relief as the Court may deem just and proper.

### TRIAL BY JURY

149.   Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand, a trial by jury.


Dated:  May 27, 2024                    THE INGBER LAW GROUP


                                        _/s/ Jason M. Ingber_
                                        Jason M. Ingber, Esq.
                                        Attorneys for Plaintiffs

**CLASS ACTION COMPLAINT**